THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN WILLIAMS, Defendant-Appellant.

First District (2nd Division) No. 1—86—3550

Opinion filed June 27, 1989.

Michael J. Pelletier and Debra R. Salinger, both of State Appellate Defender's Office, of Chicago, and John Williams, *pro se*, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund and Maureen Harton, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

Defendant John Williams appeals his conviction for aggravated criminal sexual assault and aggravated criminal sexual abuse.

Defendant was indicted on October 7, 1985, on 19 counts of aggravated criminal sexual assault based on oral copulation, 18 counts of criminal sexual assault based on anal penetration, 19 counts of aggravated criminal sexual abuse based on oral copulation, 19 counts of aggravated criminal sexual abuse based on anal penetration, 1 count of aggravated criminal sexual assault based on sexual intercourse, 18 counts of kidnapping, 19 counts of aggravated kidnapping, and 19 counts of unlawful restraint in connection with alleged sexual conduct between defendant and 12-year-old Kevin Frenden, the complaining witness, on April 1 through 4, 1985, April 6 through 8, 1985, April 15, 1985, July 29 through 31, 1985, and August 1 through 8, 1985. Before trial, the State nol-prossed all counts except for 19 counts of aggravated criminal sexual assault based on oral copulation and 19 counts of aggravated criminal sexual abuse based on oral copulation, and 19 counts of aggravated criminal sexual abuse based on anal penetration.

Prior to the commencement of the trial and prior to the *voir dire*, defendant was represented by a Cook County public defender. Defendant filed a motion for the appointment of a Chicago Bar Association lawyer to represent him. That motion was denied. On December 11, 1985, the public defender representing defendant indicated to the trial court that defendant wished to represent himself. After defendant's pretrial motions were disposed of, the trial court urged defendant to accept representation by counsel, but advised him that he had the right to represent himself, although he would "not be given any special consideration." The court further advised defendant that he could receive a "possible prison sentence of six to thirty years in the State penitentiary," and that "the circumstances are such that an extended term can be had." The court then told defendant that Mr. Grzecka, a public defender, would stand by to assist him, but would not try his case. The court finally asked defendant if he understood what he was told and defendant responded in the affirmative. Defendant thereafter proceeded *pro se*. Defendant indicated that he did not want Mr. Grzecka's assistance, but the court nevertheless ordered Mr. Grzecka to provide defendant with standby assistance.

Also prior to the commencement of trial and prior to the *voir dire*, the trial court directed the State to go through the 132-count indictment, count by count, and indicate whether the State would nol-pros or amend any of the counts. Defendant and standby counsel

were present during this procedure and defendant was provided with a copy of the indictment. After the State reviewed each count, the court addressed defendant as follows:

"THE COURT: I guess that completes the charges that are pending against you, Mr. Williams. It also indicates the cases that the State intends to present to the jury.

Do you understand that, sir?

DEFENDANT: Yes, sir I do."

The court then told defendant that the State was proceeding against him with the sexual assault and sexual abuse charges. The court stated: "Do you understand that? I think that pretty much explains the situation."

At the commencement of the *voir dire*, the trial judge informed all prospective jurors as a group that the State must prove defendant guilty beyond a reasonable doubt; that defendant is presumed innocent; and that defendant need not testify or present any evidence, and "[n]obody has a right in any way to comment on whatever he does." In addition, the trial court asked each prospective juror if he or she would be fair and impartial. The jurors eventually selected had each responded to this question in the affirmative. The trial court also asked eight of the jurors selected whether they had any quarrel with the State's burden of proof or with the proposition that defendant need not prove anything. Each of the eight jurors responded in the negative. All jurors selected were present during this questioning and none stated that they had any qualms about the State's burden of proof or with the proposition that defendant need not prove anything. Apparently, none of the jurors selected were questioned individually regarding defendant's right not to testify or the presumption of innocence.

The State's first witness at defendant's trial was Kevin Frenden, the complaining witness. Frenden testified that he met defendant in February 1985 at his friend Wayne Stephens' house. Frenden testified that Stephens told him defendant was Stephens' grandfather.

Frenden testified that in April 1985 when he was 12 years old, he ran away from home, and on his second night away from home, he met with Stephens and another friend of his, Terry Lofton, and went to defendant's house at 46th and Emerald in Chicago. Frenden stated that he spent that night at defendant's house and slept next to defendant. Frenden testified that defendant awakened him during the night when defendant tried to take off Frenden's jump suit. According to Frenden, defendant put his mouth on Frenden's penis while Frenden pretended to be asleep.

Frenden testified that two nights later, he returned to defendant's house with Terry Lofton. Frenden stated that he spent that night in defendant's house and defendant "did the same thing he did the night before." Frenden testified that two nights later, he also spent the night at defendant's house and the same thing happened. Frenden stated that he went to Stephens' house the next day, where his mother found him and turned him over to the police. Frenden testified that one or two weeks later he became a ward of the State.

Frenden stated that he ran away from Cleaver Homes on or about July 29, 1985, after having stayed there for two months. According to Frenden, he went to defendant's new apartment at Archer and Halsted with another boy from Cleaver Homes. Frenden testified that defendant gave the other boy money to get back to Cleaver Homes and that he stayed at defendant's apartment during the next two weeks. Frenden stated that on the third day of his stay at defendant's apartment, Lofton came over and defendant sucked Lofton's penis. According to Frenden, after Lofton left, defendant rubbed his penis between Frenden's legs near his buttocks and ejaculated. According to Frenden, during Frenden's two-week stay at defendant's apartment, defendant either sucked Frenden's penis or rubbed his penis against Frenden's buttocks, or both, every day except for the first two days. Frenden stated that defendant would give him money, sometimes $20 or $40, after each such incident. Frenden testified that he would spend some of the money playing video games in the snack shop at 2501 South Archer.

David Waclawski testified that he owned the snack shop at 2501 South Archer and that during August 1985 he saw Frenden at his snack shop two or three times per week. Waclawski testified that during this same time period, he saw Frenden in his snack shop with an "older man," whom he identified in court as defendant.

Terry Lofton testified that he met defendant in the fall of 1984 through Wayne Stephens, who introduced defendant as his grandfather. Lofton testified that the first day he met defendant, he went with Stephens to defendant's house at 46th and Emerald. Lofton stated that defendant sucked Stephens' penis after telling Stephens to pull down his pants. Lofton testified that he saw defendant suck Stephens' penis two days later at defendant's house. According to Lofton, defendant asked Lofton if he could suck Lofton's penis, but Lofton refused. Lofton testified that he saw defendant suck Stephens' penis again one week later in defendant's house.

Lofton stated that he was in defendant's house at 46th and Emerald one time in April 1985 when Frenden was there. He stated that

he saw defendant suck Frenden's penis at that time. Lofton also testified that he was in defendant's apartment at Archer and Halsted during the summer of 1985 every two days during the time Frenden was staying with defendant. Lofton stated that he saw defendant put his penis between Frenden's legs and also suck Frenden's penis. Lofton testified that after defendant was arrested, he received three $25 checks from defendant and that defendant telephoned him twice and told him he would be hurt if he testified.

Wayne Stephens testified that he met defendant in August 1984. He stated that he went to defendant's house at 46th and Emerald in August 1984 and defendant asked him to pull down his pants. Stephens testified that he pulled down his pants and defendant sucked his penis and then gave him $1.

Stephens also testified that he introduced defendant to Lofton in the fall of 1984 and to Frenden in the winter of 1984-85. Stephens stated that he told both Lofton and Frenden that defendant was his grandfather. According to Stephens, he and Lofton went to defendant's house at 46th and Emerald several times. Stephens testified that one time defendant chased Lofton around the room and then sucked his penis. Stephens stated that when he was alone with defendant, defendant would put his penis in Stephens' behind. Stephens also stated that he went to defendant's house at 46th and Emerald several times with Frenden and that during these times, defendant would put his penis between Frenden's legs.

Peter Cammllarie, a youth officer in the Chicago police department, testified that he was assigned to investigate the disappearance of Kevin Frenden in August 1985. Cammllarie testified that he located Frenden on August 9, 1985, after talking with Lofton. Cammllarie testified that he interviewed Frenden regarding his stay with defendant and that he told Frenden at that time that he "understood" that defendant "was a child molester." According to Cammllarie, Frenden then began to cry and stated that he had been staying at defendant's apartment; that Lofton had also been a "victim" of defendant; and that Stephens was "involved with defendant."

Cammllarie testified that he processed Frenden and sent him back to Cleaver Homes and then made out a report on defendant for aggravated criminal sexual assault. Cammllarie testified that defendant was arrested by another police officer and brought to the police station. Cammllarie stated that he read defendant his rights after booking him. According to Cammllarie, defendant told him that he was born in July of 1930.

The State's last witness was Anthony O'Reilly. O'Reilly testified

that he worked at the Stock Yard Truck Stop at 4500 South Halsted and received calls from defendant during the summer of 1986 asking him to locate Lofton and Frenden. O'Reilly testified that defendant sent him three checks and also sent three checks to Lofton.

At the end of the State's case, defendant made a motion for a directed verdict of not guilty on all counts. That motion was granted with respect to the counts alleging aggravated criminal sexual assault and aggravated criminal sexual abuse on April 1, 3, 7, 8 and 15 and July 29, 1985. Defendant then rested.

After closing arguments, the jury was instructed and then began deliberations. The jury returned with a general verdict of guilty. On January 8, 1987, defendant presented a motion for a new trial. That motion was denied. The trial court heard arguments in aggravation and mitigation and then sentenced defendant to a term of 28 years in the Illinois Department of Corrections.

Defendant filed a *pro se* motion for a new trial. That motion was denied. The trial judge then appointed the State Appellate Defender's office to represent defendant on appeal. Defendant subsequently filed a series of motions requesting permission to proceed *pro se* and to file a *pro se* brief. Those motions were all denied. Defendant also petitioned the Federal court for relief, claiming a sixth amendment right to proceed *pro se* on this appeal. That petition was denied in an order dated March 28, 1989, on the ground that defendant did not raise the constitutional issue in the Illinois courts. Oral arguments were heard on May 2, 1989, at which time defendant was represented by counsel from the State Appellate Defender's office. Defendant then filed a motion in this court for a rehearing on his earlier motions requesting permission to proceed *pro se*. On May 23, 1989, we reconsidered defendant's earlier motions and permitted defendant to file his *pro se* brief, but declined to rehear oral arguments.

## I

Defendant contends first that he was denied assistance of counsel because the trial court permitted him to proceed *pro se* without admonishing him regarding his right to counsel and the nature of the charges against him as required by Illinois Supreme Court Rule 401 (107 Ill. 2d R. 401). Defendant maintains that the presence of a public defender as standby counsel did not render Rule 401 inapplicable in his case because the public defender provided him with "virtually no assistance."

■■ Illinois Supreme Court Rule 401 (107 Ill. 2d R. 401(a)) provides that for a waiver of counsel to be valid, the trial court must ad-

monish the defendant in open court of the nature of the charges against him, the minimum and maximum sentences prescribed by law, that he has a right to counsel, and that, if indigent, he has a right to appointed counsel. In *People v. Johnson* (1987), 119 Ill. 2d 119, 518 N.E.2d 100, the court held that "substantial compliance" with Rule 401 is sufficient to effectuate a valid waiver of counsel.

■ In this case, the record reflects substantial compliance with Rule 401 and that defendant knowingly and voluntarily waived counsel. First, the trial court advised defendant on numerous occasions not only that he had a right to counsel, but also that he should accept appointment of counsel. Furthermore, the court read through each count of the indictment as the State indicated whether it would nol pros or amend any of the counts. Defendant was present during this proceeding and provided with a copy of the indictment. The trial court then asked defendant if there were any charges that he did not understand. In response, defendant stated only that "[t]here are some criminal sexual assault charges." The court then explained those charges and defendant did not respond further. This colloquy demonstrates that the court adequately admonished defendant regarding the nature of the charges. Finally, there is no dispute that defendant was admonished with regard to the minimum and maximum possible sentences. The record indicates substantial compliance with Rule 401, and that is all that is required under *People v. Johnson* (1987), 119 Ill. 2d 119, 518 N.E.2d 100.

■ The same facts which establish substantial compliance with Rule 401 in this case also indicate that defendant's waiver of counsel was knowingly and voluntarily made. Because there was substantial compliance with Rule 401, we need not consider whether that rule was inapplicable solely because defendant had the benefit of standby counsel.

## II

Defendant maintains next that he was deprived of a fair trial under *People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 1062, because the trial court failed to question three jurors regarding the State's burden of proof and failed to question any of the jurors regarding defendant's privilege against self-incrimination and the presumption of innocence. Defendant maintains that he has not waived this issue by his failure to tender any questions or by his failure to object to the questioning by the trial court because the trial judge told him that he could not ask any questions of the jurors, which effectively precluded him, as a *pro se* defendant, from submitting questions or objecting to

the questions that were asked.

In *People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 1062, the court held that it is reversible error for the trial court to refuse to include in its *voir dire* examination questions submitted by the defendant on the subjects of the State's burden of proof, the defendant's decision not to testify, and the presumption of innocence. The court reasoned that such questions go "to the heart of a particular bias or prejudice which would deprive defendant of his right to a fair and impartial jury." (*People v. Zehr*, 103 Ill. 2d at 477.) The court stated that the questions submitted by the defendant need not be asked in precisely the form submitted, but "the subject matter of the questions" must be covered in the course of interrogation on *voir dire. People v. Zehr*, 103 Ill. 2d at 477.

In this case, we note that the trial court covered the required subjects in its remarks at the commencement of the *voir dire* directed to all prospective jurors as a group. We also note that the trial court individually questioned each prospective juror regarding whether he or she would be fair and impartial. Each juror eventually selected responded to these inquiries in the affirmative. Finally, we note that the trial court asked eight of the selected jurors whether they had any quarrel with the propositions that the State has the burden of proof beyond a reasonable doubt and that defendant need not prove anything. All eight responded in the negative.

■ While these might not be adequate inquiries under *Zehr* (see *People v. Starks* (1988), 169 Ill. App. 3d 588, 523 N.E.2d 983), the trial court did not fail to comply with *Zehr* because defendant never tendered any questions to the trial court for *voir dire*. There is no support for defendant's contention that *Zehr* nevertheless applies because he was precluded from tendering any questions by the trial court's remark that the court would be conducting the *voir dire* and defendant was not to ask any questions. Indeed, the Illinois Supreme Court has recently stated that it "cannot countenance use of [the right to counsel] in a manner which appears calculated to 'thwart the administration of justice or to otherwise embarrass the effective prosecution of crime.'" (*People v. Johnson* (1987), 119 Ill. 2d 119, 135, 518 N.E.2d 100, quoting *People v. Myles* (1981), 86 Ill. 2d 260, 268, 427 N.E.2d 59.) In this case, defendant was advised by the trial court that he would not be given special consideration as a *pro se* defendant. Accordingly, having elected to proceed *pro se*, defendant cannot now benefit from an alleged error caused by that decision.

Furthermore, defendant has waived this issue on appeal by not making any objections to the trial court's questioning on *voir dire*.

Even if defendant had tendered specific questions to the trial court, his failure to make a timely objection would have waived any issue under *Zehr* on appeal. See *People v. Visnack* (1985), 135 Ill. App. 3d 113, 124, 481 N.E.2d 744.

### III

Defendant contends next that he was denied due process of law because the trial court failed to conduct a hearing on his motion to quash his arrest, but admitted into evidence the testimony of Officer Cammllarie that defendant said he was born in July of 1930. Defendant maintains that this testimony was the only evidence introduced to prove an element of the offenses of aggravated criminal sexual assault and aggravated criminal sexual abuse, namely that he was over the age of 17. Defendant argues that if he had shown that his arrest was illegal, his statement to Cammllarie would have been suppressed.

The authorities defendant relies on in support of his argument are not persuasive. In *People v. DeJesus* (1987), 163 Ill. App. 3d 530, 516 N.E.2d 801, the trial court had refused to allow the defendant to argue his motion to suppress identification testimony outside the presence of the jury to determine whether there was an independent basis for the in-court identification. On appeal, the court reversed the defendant's conviction on due process grounds. The court reasoned that due process precludes a jury from convicting a defendant on identification evidence that is unreliable. The court noted that in order for the defendant to rebut the State's contention that no independent basis for the identification existed, unless a hearing was held outside the presence of the jury, the defendant would have had to introduce previously suppressed evidence during the State's case in chief. The court recognized that there is no *per se* rule requiring a hearing outside the presence of the jury on the admissibility of identification evidence, but concluded that such a hearing was mandated under the circumstances of the case before it. *People v. DeJesus*, 163 Ill. App. 3d at 533-34.

This case, by contrast, does not involve the testimony of an identification witness, but rather evidence of defendant's date of birth, which defendant belatedly claims was the product of an unlawful arrest. Due process concerns, invoked by the danger inherent in permitting a jury to hear unreliable eyewitness testimony, are not present in this case. Moreover, defendant had every opportunity to test the reliability of Officer Cammlarrie's testimony during cross-examination. Unlike the circumstances in *DeJesus*, such cross-examination would not have required defendant to introduce previously suppressed evidence.

*People v. Mertens* (1979), 77 Ill. App. 3d 791, 396 N.E.2d 595, cited by defendant, is likewise inapposite. In that case, the defendants' motion to suppress evidence had been denied on the basis that certain search warrants were valid. The defendants then sought a second evidentiary hearing on whether the scope of the search exceeded that authorized by the warrants, but the trial court refused to hold a hearing on this issue. On appeal, the court held that it was error to deny the defendants an evidentiary hearing on the scope of the search, given that the first hearing concerned only whether the warrants themselves were valid, and "[g]iven the extraordinary number of items seized from defendants' home." (*People v. Mertens*, 77 Ill. App. 3d at 802.) Thus, in *Mertens*, a hearing on the defendants' motion would have led to the suppression of evidence used to convict the defendants if a fourth amendment violation had been found.

In the present case, by contrast, a hearing on defendant's motion might not have resulted in the suppression of any evidence that the State intended to use at trial. Indeed, the trial court refused to conduct a hearing on defendant's motion to quash his arrest only after the State had indicated that it did not intend to introduce at trial any physical evidence recovered, or any inculpatory admissions obtained following defendant's arrest. The only evidence defendant claims would have been suppressed is his post-arrest statement to Officer Cammllarie that he was born in July of 1930. But, unlike the evidence introduced at trial in *Mertens*, it is not clear that defendant's post-arrest statement regarding his date of birth would have been suppressed had the trial court determined that defendant was illegally arrested.

The State argues that defendant's post-arrest statement was basic identifying data that should not be suppressed regardless of whether defendant was illegally arrested. In support of its argument, the State relies on *People v. Dalton* (1982), 91 Ill. 2d 22, 434 N.E.2d 1127. In that case, the court held that, for purposes of the fifth amendment, identifying data are not inculpatory admissions, even though they might be an element of the offense charged. Thus, under *Dalton*, where a defendant asserts his *Miranda* rights but then responds to inquiries about his age or address, such statements can be used at trial as evidence of guilt. However, *Dalton* does not hold that identifying data obtained following an illegal arrest are nevertheless admissible to prove guilt. The State's argument that *Dalton* is controlling here because a potential fifth amendment violation is "worse" than an illegal arrest is simply not persuasive.

■ In any event, we do not find it necessary to reach the issue of

whether basic identifying data obtained following an illegal arrest are nevertheless admissible to prove guilt, because we find that any error in the admission of Cammllarie's testimony regarding defendant's age was harmless. Defendant was described by witnesses at trial as an "elderly gentleman," an "older man," and as Wayne Stephens' "grandfather." There was also evidence adduced at trial that defendant had his own apartment, a driver's license and a checking account. Also, as in *People v. Boston* (1977), 52 Ill. App. 3d 18, 367 N.E.2d 383, defendant here did not raise the question of his age at trial or in his motion for a new trial, and defendant does not now state that he was not over the age of 17 during the relevant time period.

## IV

Defendant maintains next that the trial court erred in granting the State's motion to admit evidence that defendant engaged in sexual acts with Terry Lofton and Wayne Stephens under the *modus operandi* or common design exception to the rule against admission of other crimes evidence. Defendant argues that such evidence was other crimes evidence that was not relevant to demonstrate a common design or *modus operandi*, because Lofton denied that he had sexual contact with defendant, and also because the charged offenses and the purported crimes against Lofton and Stephens were not sufficiently similar to establish a common design or *modus operandi*. Defendant also maintains that his conviction must be reversed because the jury instruction regarding other crimes evidence was overly broad in that it allowed the jury to consider the evidence for purposes other than establishing a common design or *modus operandi*.

■ It is settled that evidence of other crimes is admissible if it is relevant for any purpose other than to show the propensity to commit crimes. (*People v. Phillips* (1989), 127 Ill. 2d 499; *People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 484, 485 N.E.2d 1292.) In particular, evidence of other crimes is admissible to show *modus operandi*. (*People v. Uzelac* (1988), 179 Ill. App. 3d 395, 406, 534 N.E.2d 1250; *People v. Howard* (1988), 169 Ill. App. 3d 536, 538, 523 N.E.2d 943; *People v. Kimbrough*, 138 Ill. App. 3d at 484.) *Modus operandi* refers to a method of operation or pattern of criminal behavior so distinctive that separate crimes or wrongful conduct are recognizable as the work of the same person. (*People v. Kimbrough*, 138 Ill. App. 3d at 486.) If other crimes evidence is offered to establish *modus operandi*, there must be a "strong and persuasive showing of similarity" (*People v. Phillips*, 127 Ill. 2d at 521) between the other crime and the crime charged, but it is "not necessary that the crimes be identical[.]" *Peo-*

*ple v. Kimbrough*, 138 Ill. App. 3d at 487.

In *People v. Bayer* (1987), 160 Ill. App. 3d 218, 513 N.E.2d 457, for example, the court held that evidence of the defendant's prior sexual acts against a young girl was properly admitted to prove *modus operandi*. In that case, the defendant was charged with sexually assaulting his stepdaughter on several occasions when she was between the ages of 9 and 12. On four occasions, the defendant had gone into the victim's bedroom, placed his penis in her mouth and then ejaculated. On one occasion, the defendant had placed his finger inside the victim's vagina. Finally, on an entirely separate occasion, the defendant had photographed the victim underneath her nightgown. At the defendant's trial, another girl testified that the defendant, who was then living with the girl's mother, had forced her to perform oral sex approximately once a month, from 1979 to 1982, and had twice photographed her performing sexual acts. The court held that this evidence was properly admitted to prove *modus operandi* because both girls were about the same age, they performed similar acts of oral sex on the defendant, the defendant took photographs of both girls, and the defendant threatened both the witness and a friend of the victim to prevent their disclosing the incidents.

Likewise, in *People v. Bullock* (1987), 154 Ill. App. 3d 266, 507 N.E.2d 44, the court rejected the defendant's argument that *modus operandi* evidence should not have been admitted at trial. There, the defendant was charged with sexually assaulting a nine-year-old girl by forcing her to have anal intercourse with him in the front seat of his car. The trial court admitted into evidence the testimony of a 12-year-old girl that defendant forced her to have vaginal intercourse with him in the front seat of his car. The court noted that both victims were young girls abducted as they walked to school; defendant in both cases represented himself as a police officer; defendant caught both girls and forced them into the front seat of his car; both victims were driven to an alley, forced to undress below the waist and lie on their stomachs; and both attacks occurred eight blocks from each other. The court concluded that these similarities, when considered together, established a *modus operandi* even though different cars were used and different sexual acts were performed.

In *People v. Uzelac* (1988), 179 Ill. App. 3d 395, 534 N.E.2d 1250, where the defendant had been convicted of rape and deviate sexual assault, the court held that evidence of a prior attempted rape was properly admitted to show *modus operandi*, despite some differences in the nature of the offenses, because those differences "were inconsequential in comparison to the similarities of both crimes." In that

case, both victims were females approximately 18 years old; the attacker was seen riding a bicycle prior to both attacks; both attacks occurred between 9 and 10 p.m. in an alley in Lansing, Illinois; the attacker threatened both victims with a six-inch knife and told both victims to pull down their pants; the attacker wore blue jeans in both cases; and the defendant was identified as the attacker by both victims. However, the attacks occurred one month apart from each other; the attacker wore glasses during only one of the attacks; and in one attack the victim was grabbed from behind and held at knife point, but in the other attack the victim was approached from the front and not held at knife point until she refused the attacker's advances.

Likewise, in *People v. Partin* (1987), 156 Ill. App. 3d 365, 509 N.E.2d 662, where the defendant had been convicted of indecent liberties with a child and child pornography, the court held that the testimony of two victims of lewd fondling committed by the defendant was properly admitted as evidence of *modus operandi*. There, the complaining witness and the two other victims were each males 14 or 15 years old hired by the defendant to do maintenance or custodial work for him at his funeral home; the defendant fondled each of their genitals until they obtained an erection; and these incidents all occurred in the defendant's room at his funeral home. Yet the defendant measured the erect penises of only two of his victims and took nude photographs of only the complaining witness. Noting that "[e]xact identity of the offenses is not required to admit evidence of other crimes," the court concluded that the testimony of the two victims was admissible as evidence of the defendant's *modus operandi* for the offense of indecent liberties with a child. 156 Ill. App. 3d at 371.

In this case, as in the cases discussed above, the similarities between defendant's conduct toward Frenden and his crimes against Lofton and Stephens plainly outweigh the differences. As in *Bayer*, *Bullock*, *Uzelac* and *Partin*, the victims here were all nearly the same age. Moreover, all three victims lived in the same neighborhood. Defendant met Stephens playing basketball and he met Lofton and Frenden through Stevens, being introduced to each as Stephens' "grandfather." Defendant gave each of his victims favors, either in the form of money or permission to use his apartment. Defendant permitted each of his victims to be present on at least one occasion as merely an observer, rather than a participant in the sexual acts. In addition, Frenden, Lofton, and Stephens all identified defendant as the perpetrator of the offenses.

Significantly, as in *Bayer*, defendant here engaged in oral sex

with each of the victims in his apartment. That defendant might have engaged in anal intercourse with some but not all of his victims is plainly not fatal to establishing *modus operandi*. In *Bayer*, the nature of the sexual acts was different on at least one occasion. In *Bullock*, *modus operandi* was established even though the defendant had committed anal intercourse with one victim and vaginal intercourse with the other victim. In *Uzelac*, the defendant had attacked his victims in a different manner. And in *Partin*, the defendant measured only two of his victims' penises and photographed only the complaining witness. As the Illinois Supreme Court observed in *People v. Phillips* (127 Ill. 2d at 520-21) "[w]hile similarity is essential to admittance of the disputed evidence, the test is not one of exact, rigorous identity." Indeed, " 'some dissimilarity will always exist between independent crimes.' " (*People v. Phillips*, 127 Ill. 2d at 521, quoting *People v. Taylor* (1984), 101 Ill. 2d 508, 521.) In this case, the similarities plainly outweigh the differences and other crimes evidence was properly admitted for the purpose of establishing defendant's *modus operandi*.

*People v. Esterline* (1987), 159 Ill. App. 3d 164, 512 N.E.2d 358, relied on by defendant, does not compel a different conclusion. In that case, the defendant was convicted of indecent liberties with a child. At trial, the State had introduced evidence of acts of indecent liberties with children other than the complaining witness. The only similarities between the offenses were that some of them occurred in the defendant's den, some of them involved pornographic magazines, and all of the children and the defendant lived on the same block. On the other hand, the differences were "numerous." The defendant's offense against the complaining witness involved the defendant exposing himself, using lewd language, and touching the complaining witness' thigh over her pants. The other offenses involved the defendant explaining pictures in pornographic magazines, fellatio with a male child, oral sex with a female child, ordering a child to rub his penis, masturbating in front of a child, and exposing himself in front of a child. Moreover, the offenses occurred in different rooms in the defendant's house. Because of these striking dissimilarities, the court held that the other crimes evidence was improperly admitted to show the defendant's *modus operandi*. The court also held that the nature of the other offenses was "so inflammatory" that the prejudice to the defendant resulting from the erroneous admission of the evidence outweighed any possible probative value it might have had.

In this case, by contrast, all of the offenses involved oral sex with 12- and 13-year-old males. To be sure, some but not all of the offenses might have involved anal intercourse. In addition, it appears that only

Frenden stayed overnight at defendant's house and was given $20 or $40 by defendant. But these differences are plainly inconsequential and certainly may not fairly be analogized to the overwhelming variety of sexual offenses committed by the defendant in *Esterline*. Furthermore, the other crimes evidence in this case, unlike the case in *Esterline*, was not so "inflammatory" that its probative value was outweighed by its prejudicial effect. For this reason alone, defendant's reliance on *Esterline* is misplaced.

■ Defendant's reliance on *People v. Walters* (1979), 69 Ill. App. 3d 906, 387 N.E.2d 1230, is also misplaced. That Lofton denied having permitted defendant to engage in oral sex with him on one occasion does not render other evidence of defendant's sexual encounters with Lofton inadmissible. Although it must be shown that a crime occurred and the defendant committed it, it is well settled that such proof need not be beyond a reasonable doubt. (*People v. Partin* (1987), 156 Ill. App. 3d 365, 509 N.E.2d 662; *People v. Walters* (1979), 69 Ill. App. 3d 906, 387 N.E.2d 1230.) Because Frenden and Stephens both testified that defendant committed other crimes against Lofton, defendant's contention, that evidence of other crimes against Lofton is inadmissible because there was no evidence demonstrating the existence of such crimes, is plainly without merit.

■ Finally, defendant's reliance on *People v. Connors* (1980), 82 Ill. App. 3d 312, 402 N.E.2d 773, is misplaced because the overly broad jury instruction in that case compounded the error in the admission of other crimes evidence. Here, the other crimes evidence was properly admitted, so that the overly broad jury instruction was not prejudicial error. See *People v. Weathers* (1974), 23 Ill. App. 3d 907, 320 N.E.2d 442, *rev'd on other grounds* (1975), 62 Ill. 2d 114, 338 N.E.2d 442.

## V

Defendant maintains that the State failed to meet its burden of proof because Frenden's testimony was not sufficiently corroborated. Defendant argues that, as in *People v. McGrath* (1963), 28 Ill. 2d 132, 190 N.E.2d 746, substantial corroboration of the complaining witness' testimony is required. Defendant then argues that the testimony of Lofton and Stephens was not sufficient corroboration because they never testified to the dates of the incidents they observed, and Frenden never testified that anyone else was present when he had sexual contact with defendant.

■ Defendant's argument, however, is without merit. In sexual abuse cases like this one, where the testimony of the complaining wit-

ness is clear and convincing, or is independently corroborated, the reviewing court will not overturn a finding of guilty unless the evidence is so palpably contrary to the finding or so unreasonable and improbable as to cause a reasonable doubt as to defendant's guilt. (*People v. Lewis* (1984), 103 Ill. 2d 111, 117, 468 N.E.2d 1222; *People v. Avila* (1989), 180 Ill. App. 3d 345, 350, 535 N.E.2d 1027.) The testimony of the complaining witness need not be uncontradicted or unimpeached in order to be clear and convincing. (*People v. Allman* (1989), 180 Ill. App. 3d 396, 402, 535 N.E.2d 1097.) Finally, the reviewing court should not substitute its judgment for that of the trier of fact regarding questions of credibility or the weight of the evidence in cases involving sexual offenses. *People v. Avila*, 180 Ill. App. 3d at 350; *People v. Laughlin* (1987), 163 Ill. App. 3d 115, 124, 516 N.E.2d 535.

In this case Frenden, the complaining witness, gave credible and unimpeached testimony at trial. In addition, the testimony of Lofton and Stephens corroborated Frenden's testimony in several respects, even though their testimony was elicited for the limited purpose of establishing a common design or *modus operandi*. Specifically, both Lofton and Stevens corroborated Frenden's account of how Frenden met defendant and went to defendant's apartment. Also, both Lofton and Stephens were eyewitnesses to at least one instance of sexual conduct between Frenden and defendant. Accordingly, we do not find the evidence of defendant's guilt so palpably contrary to the findings or so unreasonable and improbable as to cause a reasonable doubt as to defendant's guilt.

## VI

Defendant contends next that the admission of the out-of-court statements of Officer Cammllarie that he "understood" defendant "was a child molester" and "liked little kids" violated defendant's sixth amendment right to confrontation because Cammllarie's "understanding" necessarily came from a source which defendant could not cross-examine. Defendant also maintains that those statements were admitted in violation of his due process rights because they were other crimes evidence with no probative value other than to demonstrate a propensity to engage in unlawful sexual acts with children. Defendant argues that these errors are not harmless because Cammllarie's testimony served to corroborate Frenden's testimony by demonstrating that defendant had a propensity to commit the charged offenses.

However, defendant has plainly waived this issue by failing to object to Cammllarie's testimony at trial and by failing to raise the issue

in his post-trial motion. Accordingly, we need only address the issue if it rises to the level of plain error. See 107 Ill. 2d R..615(a).

■■■ The plain error rule is not a general savings clause, preserving for review all errors affecting substantial rights whether or not they have been brought to the trial court's attention. (*People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227.) Rather, the rule applies only where the evidence is closely balanced, in order to insure that the defendant has not been the victim of a serious injustice. *People v. Carlson* (1980), 79 Ill. 2d 564, 577-78, 404 N.E.2d 233.

■■■ If there was any error in the admission of Cammllarie's testimony, it was certainly not plain error given the overwhelming evidence adduced at trial that defendant engaged in sexual acts with Frenden. Moreover, because Cammllarie was available for cross-examination and because the only possible sources of Cammllarie's knowledge that defendant was a child molester were other witnesses at defendant's trial who were also available for cross-examination, the admission of Officer Cammllarie's testimony was not a violation of defendant's sixth amendment right to confrontation.

## VII

Defendant maintains next that Cammllarie's testimony regarding his conversation with Frenden was admitted in violation of the prompt complaint exception to the rule against hearsay (Ill. Rev. Stat. 1985, ch. 38, par. 115–10), and also in violation of defendant's sixth amendment right to confrontation. Specifically, defendant claims that the hearsay exception for prompt complaints applies only to testimony of a noncomplaining witness that corroborates the testimony of the complaining witness. Defendant then argues that the admission of Cammllarie's testimony "violated" the prompt complaint exception because Frenden never testified to making a complaint to Cammllarie regarding defendant's conduct. Defendant also claims that the admission of Cammllarie's testimony regarding his conversation with Frenden violated his confrontation rights because Frenden, not having testified to that conversation, could not be cross-examined concerning the statements imputed to him by Cammllarie.

■■■ However, defendant has waived this issue by not objecting to Cammllarie's testimony at trial and by not raising the issue in his post-trial motion. Even if defendant had properly preserved the issue, any error is, at most, harmless because the hearsay statements imputed to Frenden, namely that Frenden had "stayed with" defendant, Lofton had been a "victim" of defendant and Stephens had been "involved" with defendant, were all cumulative of testimony of Frenden,

Lofton, and Stephens. (See *People v. Cihlar* (1982), 106 Ill. App. 3d 824, 830, 436 N.E.2d 1041.) Moreover, defendant's assertion that his confrontation rights were violated is without merit because all out-of-court declarants were subject to cross-examination regarding their statements. Frenden, in particular, testified on direct examination to having a conversation with Cammllarie, contrary to defendant's contention.

## VIII

Defendant maintains that the trial court improperly precluded cross-examination of Lofton regarding his address. Defendant argues that he had reason to believe Lofton was incarcerated at the time of trial, so that Lofton might have been impeached if his address had been brought out at trial. Defendant asserts that, under *Alford v. United States* (1931), 282 U.S. 687, 75 L. Ed. 624, 51 S. Ct. 218, it is reversible error to preclude questioning regarding a prosecution witness' place of residence.

 However, defendant has waived this issue by not making an offer of proof at trial. (See *People v. Martin* (1981), 101 Ill. App. 3d 480, 428 N.E.2d 591; *People v. Thibudeaux* (1981), 98 Ill. App. 3d 1105, 424 N.E.2d 1178.) Moreover, the scope of cross-examination is a determination which rests largely in the discretion of the trial court. (*People v. Kline* (1982), 92 Ill. 2d 490, 504, 442 N.E.2d 154.) Nothing in the record indicates the relevancy or materiality of Lofton's address at the time of trial. Indeed, there is some indication in the record that defendant did not believe that Lofton was incarcerated several days before defendant's trial. Furthermore, there was evidence that defendant had threatened to hurt Lofton if he testified. Under these circumstances, the trial court did not abuse its discretion by precluding defendant from eliciting Lofton's address on cross-examination.

## IX

Defendant claims that his conviction should be reversed because the indictment alleges aggravated criminal sexual abuse "based upon anal intercourse" and there was no evidence presented at trial showing that defendant had anal intercourse with Frenden.

 Defendant's argument, however, must fail under *People v. Lewis* (1986), 147 Ill. App. 3d 249, 498 N.E.2d 1169. In that case, the court held that the State is not required to prove allegations of "anal intercourse" if the indictment, like the indictment in this case, otherwise tracks the language of the aggravated criminal sexual abuse stat-

ute. Accordingly, defendant's contention is without merit.

## X

Defendant maintains that his sentence should be vacated and his case remanded for resentencing because the trial judge commented at the sentencing hearing on the defendant's conduct toward "young men" and "younger generations," although it is an element of the offenses for which defendant was convicted that the victim was under the age of 13. Defendant argues that the general proposition, that it is a violation of due process if an element of an offense is relied on as an aggravating factor at sentencing, applies in his case.

■■■ However, the record does not clearly indicate that the trial court relied on the age of the victim in this case as an aggravating factor at sentencing. On the contrary, it appears that the trial court properly exercised its discretion in sentencing defendant because its observations regarding defendant's conduct toward "young men" were properly considered in aggravation. Specifically, the trial court's comment properly pertained to defendant's *modus operandi* and not to the specific age of his victim. Also, defendant's prior conviction for sexually assaulting a child alone rendered the court's comments proper.

Defendant also maintains that his sentence should be vacated and his case remanded for resentencing because he received a single sentence for aggravated criminal sexual assault and aggravated criminal sexual abuse, so that the trial court might have given consideration in sentencing to his convictions based on anal intercourse which, defendant contends, must be reversed. However, as discussed above, the premise of defendant's argument, that his convictions based on anal intercourse must be reversed, is incorrect under *People v. Lewis* (1986), 147 Ill. App. 3d 249, 498 N.E.2d 1169. Accordingly, the trial court could not have improperly considered any convictions based on anal intercourse and defendant's contention is without merit.

## XI

Finally, defendant raises 12 points in his *pro se* brief. We have reviewed each of these contentions and find that all but two were adequately covered either at oral argument or in the briefs filed by defendant's appointed counsel. We are also of the opinion that the two points discussed below merit only our brief attention.

First, defendant contends that he was denied due process of law and his sixth amendment right to counsel because of the trial court's failure to appoint counsel other than the public defender and because

of standby counsel's alleged interference with his preparation for and defense at trial. Specifically, defendant asserts that the public defender's office did not adequately assist him in preparing for trial because he was not provided with written statements of witnesses, nor with the juvenile records of either Frenden or Lofton. Defendant also maintains that standby counsel frustrated his defense at trial by interrupting him during conferences with the trial judge and by agreeing to a stipulation and a jury instruction.

 We find defendant's argument wholly unpersuasive. It is settled that a criminal defendant does not have a constitutional right to both self-representation and the assistance of standby counsel. (*People v. Williams* (1983), 97 Ill. 2d 252, 267, 454 N.E.2d 220; *People v. Lindsey* (1974), 17 Ill. App. 3d 137, 143, 308 N.E.2d 111.) Moreover, a defendant may not refuse the services of appointed counsel and then claim on appeal that he was denied effective assistance of counsel. (*People v. Johnson* (1987), 119 Ill. 2d 119, 135, 518 N.E.2d 100.) As the Illinois Supreme Court observed: "Our system of criminal justice simply could not function were we to permit defendants, indigent or otherwise, to intentionally hamper counsel's efforts to represent them and later plead the resulting [ineffective assistance] of counsel as a grounds for reversal." *People v. Taylor* (1984), 101 Ill. 2d 508, 523, 463 N.E.2d 705.

 In this case, defendant chose to represent himself and also indicated that he did not want the assistance of standby counsel. On several occasions, defendant nevertheless sought and received the advice of standby counsel. Any alleged errors attributable to standby counsel's participation in this case were plainly "invited through [defendant's] own conduct" in circumscribing the role of standby counsel through his own efforts to represent himself. (See *People v. Johnson*, 119 Ill. 2d at 135.) It follows that defendant may not assert such alleged errors as grounds for reversal.

In any event, the record does not support defendant's allegations. Contrary to defendant's assertion that standby counsel frustrated his defense, the record reflects that defendant consulted with standby counsel on several occasions and apparently followed the advice he was given. In addition, the record reflects that defendant consulted with standby counsel regarding a stipulation to a juvenile record and agreed to that stipulation. The record also reflects that defendant followed the advise of standby counsel and agreed to omit a jury instruction regarding circumstantial evidence. Finally, as discussed below, the record reflects that defendant was provided with certain juvenile records of the State's witnesses.

The second contention in defendant's *pro se* brief that we address in defendant's claim that the State did not answer his discovery requests concerning the juvenile records of Frenden and Lofton. The supplemental record filed in this case on May 15, 1989, indicates that on September 25, 1986, certified copies of juvenile adjudications of both Kevin Frenden and Terry Lofton were made available to defendant. We note that the trial judge, in ruling on defendant's post-trial motion, stated that defendant was provided with the records that he sought. We also note that a youth officer was present in court with defendant during a pretrial proceeding. That youth officer indicated that certain juvenile records would be made available to defendant on the next court date. There is no indication in the record that defendant was not given the records that the youth officer said would be available. Thus, defendant's claim that he was denied discovery of either exculpatory or impeachment material is not supported by the record.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BILANDIC, P.J., and HARTMAN, J., concur.