(Nos. 42925, 42926, 42927 cons.— <span style="background:black">    </span>

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
MAURICE SIMPKINS *et al.,* Appellants.

*Opinion filed April 1, 1971.*

MARSHALL PATNER and THOMAS MEITES, both of Chicago, appointed by the court, for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago,

(JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and GEORGE ELSENER, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Each of the three defendants, Maurice Simpkins, Wendell Ross, and Gerald Patten, was charged with violating section 25—1(a)(1) of the Criminal Code. (Ill. Rev. Stat. 1969, ch. 38, par. 25—1(a)(1).) Each complaint charged that the named defendant "has, on or about 23 July 69 at 51st St. and Ingleside committed the offense of Mob Action in that he did without authority of law and acting together with [the other two defendants and other named persons] use force in such manner as to disturb the peace by firing a revolver  *  *  *." After a bench trial in the circuit court of Cook County, the defendants were found guilty, and each defendant was sentenced to imprisonment for one year. In addition, Simpkins and Patten were each sentenced to two years' probation. The defendants appealed to this court, and the appeals were consolidated. Several constitutional issues are raised.

The only witness for the prosecution was Officer Emmett Boyd of the Chicago Police Department, who testified that on the afternoon of July 23, 1969, he received a radio call that shots had been fired at 5100 South Ingleside in Chicago. When he arrived there he heard several shots and saw two groups of teenagers running in opposite directions. The group that he followed ran to an automobile parked in the middle of 51st Street. One of the youths in this group, a juvenile, had a revolver in his hand. The officer approached the automobile and placed the group of seven, which included the three present defendants, under arrest. The revolver contained "one spent cartridge and two misfires." Officer Boyd also testified that he saw no shots being fired, that none of the defendants was carrying a gun, and that no one was injured,

At the conclusion of the officer's testimony, the State rested, and the defendants' attorneys moved that the charges be dismissed on the ground that there was no evidence that the defendants "knew of the weapon." The trial judge denied the motions.

Each defendant then testified. The substance of their testimony was that the defendants and four others were in a car on their way to a party when a group of about 10 youths, known to the defendants as members of a gang called the "Disciples", ran up to the car. One of the Disciples said to the defendant Patten: "I got something for you. I will get you." The defendants testified further that they drove on for about a block, and then the driver, who was not one of the defendants, stopped the car. All seven occupants got out and began walking back toward the Disciples, who were walking toward them. The defendants testified that the reason they got out of the car and walked back to the Disciples was to find out why they had "confronted" Patten, or, as Patten put it, "to see what it was they had against me." The two groups had approached to within two or three feet of one another when some of the Disciples drew guns and fired. The defendants turned and ran back to their car, where they were arrested by Officer Boyd. The defendants admitted that one of the juveniles in their group was found with a gun. Each defendant testified, however, that he did not know the youth was carrying a gun, and that he did not see anyone in their group fire a gun.

On cross-examination, the defendant Ross testified that he had been, but was not at the time of this occurrence, a member of another gang called the "Rangers." The defendant Patten testified that he had been, but no longer was, a member of the Rangers, that the Rangers had told the Disciples "they could do anything they wanted to me because I was not a member any more," and that the Disciples wanted to "get" him because of his past membership in the Rangers.

Section 25—1(a)(1) of the Criminal Code under which the defendants were charged is part of what is commonly referred to as the Mob Action Statute. The portion involved in this case provides: "(a) Mob action consists of * * * (1) The use of force or violence disturbing the public peace by 2 or more persons acting together and without authority of law; * * *." (Ill. Rev. Stat. 1969, ch. 38, par. 25—1 (a)(1).) The defendants assert that "the evidence shows only that the defendants were attacked while peacefully approaching a group which had expressed animosity to them and while they sought to dissolve the ill-feeling by peaceful, non-violent discussions with those insulting them." Upon this characterization of the evidence the defendants then mount an attack upon the statute on first amendment grounds, charging that it is vague and overbroad.

We are not persuaded by this argument. The trier of the fact was not required to adopt this pollyannaish view of the defendants' conduct. On the contrary, he could have believed that the evidence showed, beyond a reasonable doubt, that the defendants did not stop their car, get out in a body, and advance upon the other group in order to engage in reasoned exposition, but rather to engage in combat with the members of the other group on the public street, thereby disturbing the public peace. He could have concluded that when the defendants marched *en masse* back down the street until they were separated by only two or three feet from the other group, they were engaged in "physical aggression reasonably capable of inspiring fear of injury or harm." (*Landry* v. *Daley* (N.D. Ill., 1968), 280 F. Supp. 938, 954.) The fact that the members of the other group were guilty of the same kind of unlawful disturbance of the peace culminating in the firing of shots by one or both groups does not excuse these defendants.

The defendants also contend that there was a fatal variance between the complaints upon which they were tried and the evidence upon which they were convicted. The com-

plaints charged that each defendant had "used force in such manner as to disturb the peace *by firing a revolver.*" With the exception of the italicized phrase, the complaints allege the offense in the language of the statute. The defendants concentrate on the italicized phrase and assert that they were charged "with disturbing the peace by firing a revolver." They correctly point out that the prosecution's case in chief established only that a shot was fired. "Responding to the charge and this evidence," they say, "defendants took the stand and demonstrated beyond peradventure that neither they nor any of their companions committed the crime charged, disturbing the peace by firing a revolver. In the course of their testimony, defendants explained the circumstances surrounding their presence at the scene of the arrest, all of which went to the point that none of them had fired a gun or in fact had a gun. Seizing on some of this testimony by defendants, the State would now have them convicted of disturbing the peace by participating in a gang fight. Thus, the State would have this court affirm a conviction for an occurrence about which, in violation of Ill. Rev. Stat. 1969, ch. 38, par. 111—3(a)(3), defendants were not informed of 'the nature and elements of the offense charged'."

The contention is that the variance in this case was prejudicial because it misled the defendants in making their defenses. They were misled, they say, in this manner: "In responding to the charged transaction of disturbing the peace by firing a revolver, they took the stand to prove that neither they nor any of their companions had fired a weapon, only to find that now they are charged with gang fighting, based solely on their own testimony." In support of that contention they rely upon *People* v. *Figgers* (1962), 23 Ill.2d 516, and *People* v. *Fry* (1963), 29 Ill.2d 455.

We cannot accept this contention. The defendants do not suggest that any of their testimony was inaccurate or that because of the italicized phrase in the complaints they omitted to put before the court any facts bearing upon

their guilt or innocence. The complaints met the requirements of section 111—3 of the Code of Criminal Procedure. (Ill. Rev. Stat. 1969, ch. 38, par. 111—3.) More particularly, each complaint stated the name of the accused, the name, date and place of the offense, cited the statutory provision alleged to have been violated and set forth in the language of the statute the nature and elements of the offense charged. The additional phrase was unnecessary and could be disregarded as surplusage without affecting the validity of the complaints. (See *People* v. *Crawford* (1962), 23 Ill.2d 605, 607; *People* v. *Adams* (1970), 46 Ill.2d 200.) The particular means by which each defendant participated in the creation of the disturbance was not critical, and the fact that none of the individual defendants had fired a revolver was immaterial.

The defendants are entirely correct, however, in their contention that the sentences imposed upon them greatly exceeded the maximum authorized by statute. For the offense with which the defendants were charged the penalty is a fine not to exceed $500 or imprisonment not to exceed 30 days, or both. (Ill. Rev. Stat. 1969, ch. 38, par. 25—1(b).) To the extent that the sentence of imprisonment in this case exceeded that which could legally have been imposed, it is void. (*People* v. *Howlett*, 408 Ill. 171.) The judgment of conviction is affirmed, as is the sentence insofar as it conforms to the statute.

*Judgment affirmed.*