THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CRAIG MARTIN LEWIS, Defendant-Appellant.

First District (3rd Division)   No. 85—626

Opinion filed August 27, 1986.—Rehearing denied October 7, 1986.

James J. Doherty, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Peter D. Fischer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

After a bench trial, the trial court found defendant Craig Lewis not guilty on 17 counts of a 20-count indictment, but guilty on one count of aggravated criminal sexual abuse. The court found that the three counts of aggravated criminal sexual abuse merged into one, and therefore it entered no finding regarding two of the counts. The

court sentenced defendant to four years' probation. On appeal, defendant contends: (1) the counts on which he was convicted were void; (2) the State failed to prove that any crime occurred; (3) the State failed to prove the crimes alleged in the counts; and (4) the trial court erroneously admitted hearsay into evidence.

The grand jury charged in count 12 of the indictment that:

"[O]n or about September 23, 1984 at and within the county of Cook Craig Martin Lewis committed the offense of aggravated criminal sexual abuse in that he, a person 17 years of age or over, committed an act of sexual conduct, to wit: sexual intercourse with [O.S.], a person under 13 years of age, in violation of chapter 38, section 12—16—C(1) of the Illinois Revised Statutes 1983 as amended ***." (Emphasis omitted.)

The other two counts of aggravated criminal sexual abuse, counts 13 and 14, have the same words, except the phrase "sexual intercourse" is replaced with "anal intercourse" and "oral copulation."

■ Defendant contends that the three counts are void because each specifies an act of "sexual penetration," and not an act of "sexual conduct," as defined in the Criminal Code of 1961 (Ill. Rev. Stat., 1984 Supp., ch. 38, pars. 12—12(e), (f)). The State argues that the terms "sexual intercourse," "anal intercourse," and "oral copulation" are mere surplusage which the trial court properly disregarded. Surplusage is defined as "immaterial matters, or matters which may be omitted from an indictment without rendering it insufficient or doing damage to the material averments." *People v. Figgers* (1962), 23 Ill. 2d 516, 519, 179 N.E.2d 626.

■ If the phrase "to wit: sexual intercourse" is omitted from the indictment, the indictment essentially tracks the language of the statute defendant allegedly violated. That statute reads:

"(c) The accused commits aggravated criminal sexual abuse if:

(1) the accused was 17 years of age or over and commits an act of sexual conduct with a victim who was under 13 years of age when the act was committed." (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—16(c)(1).)

As our supreme court has stated: "It is sufficient to allege an offense in the language of a statute if the words so far particularize the offense that by their use alone an accused is informed with reasonable certainty of the precise offense with which he is charged." (*People v. Abrams* (1971), 48 Ill. 2d 446, 459, 271 N.E.2d 37.) Illinois courts have found that the term "lewd fondling," used in an indictment, informs a defendant with sufficient specificity of the crime with which

he is charged (*People v. Bradley* (1984), 128 Ill. App. 3d 372, 378, 470 N.E.2d 1121); similarly, an indictment which alleged that defendant committed an "indecent act" was found sufficient (*People v. Johnson* (1946), 392 Ill. 409, 411, 64 N.E.2d 878).

█ The Criminal Code of 1961 defines "sexual conduct" as: "any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused, or any part of the body of a child under 13 years of age, for the purpose of sexual gratification or arousal of the victim or the accused." (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12–12(e).) The fact that the word "or" is used several times in the statutory definition does not, in and of itself, render the term "sexual conduct" imprecise. (*People v. Bradley* (1984), 128 Ill. App. 3d 372, 378, 470 N.E.2d 1121.) Applying the statutory definition of sexual conduct, we find that section 12–16(c)(1) of the Criminal Code of 1961 essentially provides that any touching of a child under 13 years of age, for the purpose of sexual arousal, constitutes sexual conduct. We find that the words "sexual conduct," standing alone in counts 12, 13 and 14, without the phrases "to wit: sexual intercourse," "to wit: anal intercourse," and "to wit: oral copulation," were sufficiently specific to inform defendant with reasonable certainty of the offense with which he was charged. Therefore, those phrases may be omitted from counts 12, 13 and 14 without rendering them insufficient. *People v. Figgers* (1962), 23 Ill. 2d 516, 179 N.E.2d 626.

Defendant claims that these phrases cannot be regarded as mere surplusage because each specifies a crime distinct from aggravated criminal sexual abuse. Defendant relies principally on *People v. Abrams* (1971), 48 Ill. 2d 446, 271 N.E.2d 37, and *People v. Heard* (1970), 47 Ill. 2d 501, 266 N.E.2d 340. In *Abrams*, defendant was charged with assaulting police officers, in that she "did without lawful authority strike the officer(s) about the arms and body." (*People v. Abrams* (1971), 48 Ill. 2d 446, 459, 271 N.E.2d 37.) Our supreme court stated: "If there has been any touching or other form of physical contact with the victim, a battery has been committed and not an assault ***." (48 Ill. 2d 446, 459-60, 271 N.E.2d 37.) In *Heard* the court found a complaint for gambling void because it employed several disjunctives between disparate acts. "The use of the disjunctive under these circumstances causes uncertainty and conjecture as to which of the alternatives the accused is charged with committing." *People v. Heard* (1970), 47 Ill. 2d 501, 505, 266 N.E.2d 340.

We find that the instant case is more nearly parallel to *People v.*

*Simpkins* (1971), 48 Ill. 2d 106, 268 N.E.2d 386. Defendants in *Simpkins* were charged by complaint with disturbing the peace. The complaints tracked the language of the statute, except that in the complaints the phrase "by firing a revolver" was added. (48 Ill. 2d 106, 110, 268 N.E.2d 386.) Our supreme court stated that "[t]he particular means by which each defendant participated in the creation of the disturbance was not critical, and the fact that none of the individual defendants had fired a revolver was immaterial." (48 Ill. 2d 106, 111, 268 N.E.2d 386.) In *Simpkins*, unlike *Abrams*, the court found that without the offending language, the complaints adequately charged defendants with crimes. Similarly, in the instant case, the indictments adequately stated charges of aggravated criminal sexual abuse, but for the inclusion of the phrases, "to wit: sexual intercourse," "to wit: anal intercourse," and "to wit: oral copulation." The inclusion of the phrases did not mislead defendant in the formulation of his defense, and his defense, if successful, would have barred further prosecution for the offense. (*People v. Smith* (1984), 99 Ill. 2d 467, 471, 459 N.E.2d 1357.) Therefore, we find that those phrases were mere surplusage which the trial court appropriately disregarded. *People v. Simpkins* (1971), 48 Ill. 2d 106, 111, 268 N.E.2d 386.

█ Defendant next contends that the State failed to prove the crime charged in the indictment. At trial the State placed in evidence a statement defendant signed at the police station on September 27, 1984. According to the statement, defendant was living with his family on September 23, 1984, when his sister-in-law, Tina Lewis, came over to the house with her three children. Tina's four-year-old daughter went down to the basement to defendant's bedroom. Defendant sent her upstairs to ask her six-year-old half-sister to come downstairs. Both children went downstairs and defendant told the four-year-old to go back upstairs. According to the statement which defendant signed, defendant took off the six-year-old child's blue jeans and pulled his own pants down. He rubbed his penis against her vagina and her buttocks, and he put his penis up to her mouth. She turned away. He put her pants back on and she went upstairs.

The State presented the testimony of Tina Lewis, who stated that she took her children to visit her husband's family on September 23, 1984. Around 3 o'clock in the afternoon, she saw her four-year-old daughter come up from the basement, and she heard her tell her six-year-old daughter that Craig wanted her to come downstairs. Both children went downstairs. About 15 minutes later, Tina noticed that the four-year-old had come back upstairs but the six-year-old had not. Tina asked the four-year-old child where her sister was. Tina testified

over objection that the child answered that the older daughter was in the basement, and that Craig made the younger one come upstairs. The court stated that it overruled the objection and admitted the testimony solely for the purpose of explaining Tina's subsequent behavior.

Tina testified that she went to the basement and while she was on the stairs her six-year-old daughter started coming upstairs. Tina noticed that her zipper was down. Tina became angry and threatened to whip her. The six-year-old child did nothing. Tina took her outside and told her she would not whip her if she told the truth. Tina testified that her daughter told her, "[']Craig *** rubbed his penis on my bootie and my cootch['] and tried to make her suck his thing." Tina explained that "bootie" meant buttocks, "cootch" meant vagina, and "his thing" meant his penis. Tina told the daughter to tell her grandmother, Craig's mother Emma Lewis, the same story. Tina testified that she took her children home at 4 p.m. and she reported the incident to the police at 9 p.m., after she talked with her husband. She took her daughter to Cook County Hospital for examination the following morning.

On cross-examination, Tina admitted signing a letter in which she stated that the incident was "a big misunderstanding" which arose as a result of Craig cursing and yelling at the six-year-old child. Tina also stated on cross-examination that she taught her daughter to say "bootie" for her buttocks. On redirect, Tina testified that she signed the letter because she found out that the State charged Craig with kidnaping.

The State attempted to present the six-year-old child as a witness. The court after examination found that she was not qualified to testify. She had serious trouble taking the oath; she stated that she did not know her last name; and she frequently answered by nodding or shaking her head despite repeated requests to speak up.

Defendant testified that he was in his bedroom in the basement of his family's home on September 23, 1984. He did not see any of Tina's children in the basement. When he went outside, somewhat after 3 p.m., Tina called him back and told him his mother wanted to talk to him. Defendant testified that he did not write the statement which the State put into evidence, and he signed it because the police officer told him all charges would be dropped if he signed the statement.

Emma Lewis, defendant's mother and Tina's mother-in-law, was a defense witness. She testified that sometime during the afternoon of September 23, 1984, Tina brought her six-year-old daughter to talk to

her. Emma testified that the child said, "Craig put me out his room and he cursed me." Emma testified that she confronted Craig with this and told Craig to apologize. Craig denied cursing the child, but he apologized anyway. Tina and her children, including the six-year-old, stayed for dinner. They left around 6 p.m.

Defendant contends that the State failed to prove the crime alleged in the indictment because the State did not prove that defendant had sexual intercourse, anal intercourse, or oral copulation with the child. Since we have found those allegations to be surplusage, we agree with the trial court holding that the State did not need to prove those allegations. The State needed to prove only acts of sexual conduct, and defendant's signed confession adequately supports the trial court finding that defendant committed such acts.

■ Defendant next claims that the State did not adduce adequate evidence that any crime occurred. An uncorroborated confession cannot alone establish the *corpus delicti* of the offense, which consists of the fact that an injury occurred and the fact that the injury was caused by a criminal act. (*People v. Lambert* (1984), 104 Ill. 2d 375, 378, 472 N.E.2d 427.) The State principally relies upon Tina's testimony regarding her daughter's out-of-court statement to her for corroboration of the confession. Defendant contends that this testimony was hearsay, improperly admitted into evidence. The State maintains that the statement was properly admitted into evidence as a spontaneous declaration.

■ For an out-of-court statement to be admissible under the spontaneous-declaration exception to the hearsay rule, it must meet three criteria: (1) it must have resulted from an occurrence which was so startling that it was likely to cause an observer to produce a spontaneous and unreflecting statement; (2) it must have been made before there was time to fabricate the statement; and (3) it must have related to the occurrence. (*People v. Sanchez* (1982), 105 Ill. App. 3d 488, 491, 434 N.E.2d 395.) The trial court has wide discretion in determining whether a statement meets these criteria, and this court will reverse the trial court only if the trial court has abused its discretion. *People v. Washington* (1984), 127 Ill. App. 3d 365, 385, 468 N.E.2d 1285.

The trial court in this case determined that the child's statement to Tina qualified as a spontaneous declaration under the reasoning of *People v. Watson* (1982), 107 Ill. App. 3d 691, 438 N.E.2d 453. In that case, defendant was charged with taking indecent liberties with his three-year-old daughter. Her vaginal canal had suffered lacerations, and defendant, both at trial and when his wife came home following

the incident, stated that his daughter sustained the injury when she fell on a rocking chair, and he had cleaned the blood off the rocker. The child's mother took her to a nearby hospital more than an hour after the injuries occurred. A nurse from the hospital testified that she asked the child to tell her who had washed the rocking chair, and the child answered, "I didn't fall on the rocking chair." (107 Ill. App. 3d 691, 695, 438 N.E.2d 453.) The appellate court held that the statement was properly admitted as a spontaneous declaration despite the lapse of time and despite the child's calm demeanor at the time she made the statement. 107 Ill. App. 3d 691, 695-96, 438 N.E.2d 453.

■ In the instant case, the child had much less time in which to fabricate a story. One would expect an occurrence of such a startling nature to produce an unreflecting statement from a child, and in accord with *Watson*, we find that the child's calm demeanor does not require a finding that the statement was not spontaneous. It clearly related to the occurrence. We find that the trial court did not abuse its discretion by finding that the out-of-court statement was a spontaneous declaration.

Defendant asserts that the introduction of the statement into evidence was erroneous also because it deprived him of his constitutional right to confront the witnesses against him. (U.S. Const., amend VI.) The United States Supreme Court stated:

> "[W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." (*Ohio v. Roberts* (1980), 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539.)

In the instant case, the trial court's determination that the six-year-old child was incompetent to be a witness rendered her unavailable. The spontaneous-declaration exception to the hearsay rule was created because such declarations carry the required "indicia of reliability": they are caused by, and related to, startling occurrences which cause unreflecting statements, and they are made before the declarant has had time either to fabricate a statement or to forget the event.

■ Defendant argues that the grounds for finding the child incompetent are also grounds for excluding her out-of-court statement.

The trial court found the child incompetent because the court doubted her ability to understand the significance of the oath and because she had difficulty answering simple questions. Her spontaneous declaration was not affected by these problems. It was made so soon after the event that she did not have time to fabricate the story. Thus, her inability to understand the oath is irrelevant. Her spontaneous declaration was clearly stated, so her inability to answer simple questions is also irrelevant. We find that the trial court decision to admit Tina's testimony regarding her daughter's out-of-court statement did not deprive defendant of his constitutional right to confront the witnesses against him.

■ Defendant, relying on *People v. Linkogle* (1977), 54 Ill. App. 3d 830, 368 N.E.2d 1075, maintains that the trial court committed reversible error by admitting into evidence Tina's testimony regarding the meanings of "cootch," "bootie," and "his thing" in her daughter's statement. Defendant contends that without Tina's interpretations of those words, the statement does not corroborate his confession. In *Linkogle*, the defendant met an eight-year-old girl at a swimming pool and invited her to come over to his home. The child testified that the defendant started to "wriggle his thing" while changing his pants. The child's mother testified that she thought "wriggle his thing" meant "an up-and-down motion of his penis." (54 Ill. App. 3d 830, 832, 368 N.E.2d 1075.) There was no indication that the child was using the word "wriggle" in a sense distinct from its sense as an English word. The appellate court held that the trial court committed reversible error by allowing the child's mother to testify regarding the meaning of the child's testimony.

We agree that "a witness may not state his opinion or conclusion concerning an out-of-court statement, but is required to recite the statement as nearly as possible." (*People v. Linkogle* (1977), 54 Ill. App. 3d 830, 833, 368 N.E.2d 1075.) However a witness may properly testify regarding matters of which the witness has personal knowledge. (*People v. Rosenbaum* (1921), 299 Ill. 93, 95, 132 N.E. 433.) In the instant case, Tina testified that when her daughter said "cootch" she meant vagina, when she said "bootie" she meant buttocks, and when she said "his thing" she meant his penis. We find that Tina testified only regarding her personal knowledge of the meanings Tina taught her daughter to associate with those words. We note that mothers frequently teach their children the meanings of words. We find that the trial court did not err in admitting Tina's testimony regarding the meanings of words her daughter used. Tina's testimony corroborated defendant's confession, and thus we find that there was

sufficient proof of the *corpus delicti* of the offense.

Finally, defendant contends that the trial court committed reversible error by admitting into evidence Tina's testimony regarding the out-of-court statements made by her younger daughter. Tina testified that her younger daughter told her that Craig made the younger child go upstairs and the six-year-old sister was in the basement with Craig. The trial court allowed this testimony solely for the purpose of explaining why Tina went down the stairs towards the basement. When the testimony is used for this limited purpose and not for the purpose of establishing the truth or falsity of the out-of-court utterance, it does not constitute hearsay. (*People v. Jones* (1983), 114 Ill. App. 3d 576, 589, 449 N.E.2d 547.) Since the instant case was tried by the judge as finder of fact, we must presume that he considered the evidence only for the limited, nonhearsay purpose for which it was introduced. (*People v. McNeal* (1977), 56 Ill. App. 3d 132, 138, 371 N.E.2d 926.) We find that the trial court did not err in admitting into evidence Tina's testimony regarding her younger daughter's out-of-court statements.

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.