THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ADRIAN BALLE, Defendant-Appellant.

First District (2nd Division)   No. 1—88—1029

Opinion filed January 28, 1992.

Randolph N. Stone, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, David Stabrawa, and Alexandra C. Buzanis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Defendant Adrian Balle (Balle) appeals from the judgment of the circuit court, sitting without a jury, finding him guilty of the aggravated criminal sexual abuse (Ill. Rev. Stat. 1985, ch. 38, par. 12—16) of S.J., a seven-year-old child, for which he was sentenced to four years in the custody of the Department of Corrections. At trial, S.J., who had been found competent to testify, gave the following testimony.

On August 15, 1986, she went to Mrs. Bessie's Candy Store with her two friends, Lamar and Laronda. S.J. had previously seen Balle

in the store; he was the grandson of the owner, Mrs. Barnes. On this particular afternoon, Balle was in the store alone, and after he had given her a free candy bar, he took her by the wrist and forced her into a nearby gangway. While in the gangway, Balle allegedly touched S.J. "in between" her legs with his hand, which he put inside her shorts, and touched her vagina with his finger. While Balle touched S.J., he looked at Lamar and Laronda and told them "to juice, too." S.J. and her friends knew that this was a "bad word," connoting that they should "do it to each other," but they did not comply.

Seven-year-old Lamar, also found competent to testify, related that S.J. had received a free candy bar from Balle and that he had seen him grab S.J. and force her into the gangway alongside the store. Lamar watched from the sidewalk, approximately 2½ feet away, while Laronda watched from the gangway. Balle was crouched down in front of S.J., four inches away, face to face, while she stood with her back pressed up against a building wall. Lamar further testified that he then saw Balle "sticking his hand in her," through the right side of her shorts, in the area of her groin. Meanwhile, Mr. Barnes, Balle's grandfather, approached the scene from the street, and while Balle's hand was still inside S.J.'s shorts, Barnes stopped by Lamar and also watched. Barnes then yelled "[g]et out of that gangway," and Balle removed his hand from inside S.J.'s shorts and ran towards an alley.

It was not until August 24, 1986, that S.J. first told anyone of the incident. She had been staying with her maternal grandparents when her mother (Mrs. J.) was notified that something had happened between Balle and S.J. Mrs. J. went directly to her parents' house, where she confronted S.J., demanding to know what Balle had done to her. S.J. told her mother that Balle had put his hands in her shorts, "and she [S.J.] said, Adrian put his hand in my cat." S.J. pointed to her vagina. Mrs. J. then had S.J. take off her clothes so "I could see what I could see." Mrs. J. saw nothing, but called the police, who took her to Mt. Sinai Hospital, where she remained for five days. At trial, Mrs. J.'s conversation with S.J. was admitted over Balle's objection. Mrs. J. also testified that about a week before that conversation, around August 18, 1986, she saw S.J. asleep with her hand on her vaginal area. At that time S.J. told her about some personal hygiene problems she was experiencing. Mrs. J. examined the vaginal area and saw that it was red and chafed.

At the hospital S.J. was examined by a special team of doctors, psychiatrists, and child-life specialists to determine whether or not she had been a victim of child abuse. Dr. Sharon Ahart, an expert in

pediatrics, testified that on August 25, 1986, she examined, evaluated, observed and interviewed S.J. in Mt. Sinai Hospital's Pediatric Ecology Unit, which specializes in maltreated children. Dr. Ahart testified that when S.J. was asked why she was in the hospital she replied that she was "sick because someone had stuck a finger in her, in her cat." S.J. also told the doctor that this incident occurred in a gangway and that Balle had touched her under her clothes. S.J.'s colloquy with Dr. Ahart was also admitted over Balle's objection.

Dr. Ahart conducted a complete physical examination of S.J., which included her vaginal area, both external and internal. A tiny scar was visible inside S.J.'s genital region, on her labia majora, which could have been caused inadvertently by S.J. when she wiped herself. The internal exam also revealed a "severe amount of erythema [redness] on the inside of the *labia majora* and *minora*," a condition caused by "increased vascular irritation." S.J.'s hymen was thin and irregular, indicating that she had been traumatized in her vaginal area, even though her hymenal opening indicated a normal size. Dr. Ahart testified that in her opinion, S.J. had been digitally penetrated.

The defense presented two witnesses. One was Rita Parida, a child-life specialist, who testified that S.J. had told her that Balle had kissed her and put her on his lap, and that he had "juiced" her. S.J. also told Parida that "he wanted to feel on my coo coo. He felt on my coo coo." Parida also testified that S.J. had told her that Balle had touched her once, with a finger, over her clothes.

The other defense witness was Dr. Benjamin Emanuel, an expert in pediatrics. He testified that erythema without ecchymosis (blood under the tissue) will disappear within three to four days. He further testified that the thinness and irregularity of the hymen observed by Dr. Ahart was completely normal, and that S.J.'s hymen could not have been abused because there were no lacerations. In his opinion the physical evidence was consistent with explanations other than penetration and that the evidence did not support a finding of abuse.

At the conclusion of the trial, the court acquitted Balle of aggravated criminal sexual assault, with which he had also been charged, but found him guilty of the criminal sexual abuse charge. His motions for a new trial and in arrest of judgment were denied; and after a hearing in mitigation and aggravation, Balle was sentenced to four years in the custody of the Illinois Department of Corrections.

Balle contends that the trial court failed to find him guilty beyond a reasonable doubt. He argues that a reviewing court must find the testimony of the complaining witness to be "clear and convincing" or

"substantially corroborated" before affirming a conviction of aggravated criminal sexual abuse. (*People v. Taylor* (1987), 153 Ill. App. 3d 710, 712.) He further asserts that courts continue to adhere to these standards in sexual abuse cases. (See *People v. McCartney* (1990), 206 Ill. App. 3d 50, 55; *People v. Diaz* (1990), 201 Ill. App. 3d 830, 834; *People v. Foley* (1990), 206 Ill. App. 3d 709, 715; *People v. Gibson* (1990), 205 Ill. App. 3d 361, 367.) Therefore, he claims, this court is "free to likewise so conclude and determine whether the State's proof here was clear and convincing or substantially corroborated."

Balle also claims that S.J.'s testimony was not clear and convincing because she was unable to answer approximately 35% of the questions put to her by both the State and the defense, and that she had been coached in the answers she gave. He also suggests that her testimony was not substantially corroborated because the medical evidence was inconclusive, and that the statements made to her mother and Dr. Ahart were not identical.

While it is true that in sexual assault cases the standard employed by our courts has been to require that a complaining witness' testimony be "clear and convincing" or "substantially corroborated" (*People v. Thompson* (1978), 57 Ill. App. 3d 134, 139-40), this court but a few months ago held in *People v. Byrd* (1990), 206 Ill. App. 3d 996, 1006:

> " 'We will no longer require that in a case in which a sex offense is charged, the State must demonstrate either the victim's testimony is clear and convincing or substantially corroborated to prove guilt beyond a reasonable doubt.' (*People v. James* (1990), 200 Ill. App. 3d 380, 394.)" (206 Ill. App. 3d at 1006.)

> "[T]he standard to be used in reviewing the sufficiency of evidence in all criminal cases is proof beyond a reasonable doubt, whether the evidence is direct or circumstantial. (*People v. Pintos* (1989), 133 Ill. 2d 286, 291.)" 206 Ill. App. 3d at 1006.

More recently, the Illinois Supreme Court, in *People v. Schott* (1991), 145 Ill. 2d 188, 202, held it "incongruous for an appellate court to view a sex-offense victim's testimony with skepticism by employing this special standard of review ***. In place of this standard, we find that the reasonable doubt test articulated in *People v. Collins* (1985), 106 Ill. 2d 237, should govern an appellant's claim of evidentiary insufficiency in sex-offense cases."

Prior appellate court decisions have also rejected the more heightened standard of review in sexual offense cases. (*People v. Allen* (1991), 220 Ill. App. 3d 772; *People v. Wheeler* (1991), 216 Ill. App. 3d

609; *People v. Mack* (1991), 216 Ill. App. 3d 239; *People v. Thomas* (1991), 215 Ill. App. 3d 751; *People v. Murff* (1991), 214 Ill. App. 3d 1034; *People v. Hart* (1991), 214 Ill. App. 3d 512; *People v. McCarthy* (1991), 213 Ill. App. 3d 873, 879-80; *People v. Casiano* (1991), 212 Ill. App. 3d 680; *People v. Stengel* (1991), 211 Ill. App. 3d 337, 346; *People v. Puhl* (1991), 211 Ill. App. 3d 457; *People v. Lemons* (1991), 210 Ill. App. 3d 33; *People v. Nicholl* (1991), 210 Ill. App. 3d 1001, 1012; *People v. Westfield* (1990), 207 Ill. App. 3d 772, 777; *People v. Byrd* (1990), 206 Ill. App. 3d 996; *People v. Roy* (1990), 201 Ill. App. 3d 166, 185.) The correct question to ask on review now is "whether the evidence, viewed in the light most favorable to the State, would support a rational trier of fact's determination that the essential elements of the crime have been proved beyond a reasonable doubt." (*Allen*, 220 Ill. App. 3d at 777.) In light of this standard, we need not consider whether the testimony of S.J. was "clear and convincing" or "substantially corroborated." Rather, the "inquiry is limited to whether the evidence, when considered in the light most favorable to the State, supports the trial court's determination that [Balle was] guilty of the sexual [abuse of S.J.]." *Allen*, 220 Ill. App. 3d at 777.

" 'In a bench trial, it is for the trial judge to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence.' " (*People v. Allen* (1991), 220 Ill. App. 3d 772, 779, quoting *People v. Slim* (1989), 127 Ill. 2d 302, 307, citing *People v. Hall* (1990), 194 Ill. App. 3d 532; *People v. Hutson* (1987), 153 Ill. App. 3d 1073.) And it is for the trial court also to "resolve inconsistencies and conflicts in the State's evidence." *Allen*, 220 Ill. App. 3d at 779.

S.J. was found to know the difference between lying and telling the truth. That she may not have been able to answer more than a third of the questions put to her by the defense and the prosecution is of no moment in light of the fact that she plainly answered every question that went to the core issues of the case. Even on cross-examination, she testified with great certainty about Balle's acts: she felt his finger, and she pointed to the place that he fondled—her groin area. She remembered also that she spent five days in Mt. Sinai Hospital, and that while she was there, she used anatomically correct dolls and explained to Dr. Ahart and Rita Parida (the latter, a defense witness) Balle's sexual actions. She was positive about all that took place in the gangway, the focal point of the occurrences that form the gravamen of the indictment in this case, and she identified Balle. Moreover, her delay in reporting the abuse is understandable, since such delays are acknowledged in the law as being very often due to

recognized shame. (See *People v. Campos* (1978), 60 Ill. App. 3d 36, 38-39.) In *Campos*, a five-month delay was excused by factors such as the nature of the attack and the shame associated with such an experience. (*Campos*, 60 Ill. App. 3d at 37-39.) We hold that the evidence in this case clearly supports a finding of guilt beyond a reasonable doubt.

Balle next argues that in this case the indictment failed to charge an essential element of the offense: that Balle touched S.J. for the purpose of sexual gratification or arousal of the victim or the defendant. Balle further argues that where an indictment fails to comply with the requirement of section 111—3 of the Code of Criminal Procedure of 1963 that it set forth the "nature and elements of the offense charged," and such failure is raised in a motion in arrest of judgment, as was done here, a court of review must reverse any conviction based on such a defect.

The elements of section 12—16(c)(1) are as follows:

"(c) The accused commits aggravated criminal sexual abuse if:

(1) the accused was 17 years of age or over and commits an act of sexual conduct with a victim who was under 13 years of age when the act was committed." Ill. Rev. Stat. 1985, ch. 38, par. 12—16(c)(1).

The count charging Balle with aggravated criminal sexual abuse reads as follows:

"Adrian Balle committed the offense of aggravated criminal sexual abuse in that he, a person over 17 years of age, committed an act of sexual conduct, to wit: Adrian Balle's hand fondled the vagina of [S.J.], a person under 13 years of age, in violation of Chapter 38, [section] 12—16(c)(1) of the Illinois Revised Statutes 1985 as amended ***."

The definition of "sexual conduct" appears in section 12—12(e) of the Criminal Code of 1961 as:

"any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused, or any part of the body of a child under 13 years of age, for the purpose of sexual gratification or arousal of the victim or the accused." Ill. Rev. Stat. 1985, ch. 38, par. 12—12(e).

■ We first consider the State's argument that Balle waived his right to contest the sufficiency of the aggravated criminal sexual abuse count of the indictment by failing to attack the sufficiency of the aggravated criminal sexual assault count as well, and we find it

unconvincing. Even if the aggravated criminal sexual abuse charge were defective, the State asserts, the aggravated criminal sexual assault charge, the sufficiency of which was not challenged, was adequate to convict Balle of aggravated criminal sexual abuse. Since he is deemed to have received adequate notice with respect to the aggravated criminal sexual assault charge, the State continues, he cannot now claim that the notice he had of the lesser included charge of aggravated criminal sexual abuse was inadequate.

The State offers no plausible reason as to why Balle should have contested the sufficiency of the aggravated criminal sexual assault when he was not found guilty of that charge; nor does the State cite any authority for this proposition. (See *People v. Felella* (1989), 131 Ill. 2d 525, 540 ("[a] point raised but not argued or supported by citation to relevant authority fails to satisfy the requirements of Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)) and is therefore waived").) We therefore find the State's contention that it was necessary for Balle to complain of the adequacy of the indictment for the greater offense in order to make a successful attack on its sufficiency for the lesser included offense to be totally without foundation.

■ As to the merits of the issue he raises, Balle cites *People v. Edwards* (1990), 195 Ill. App. 3d 454, as controlling. In *Edwards*, the defendant was charged with two counts of aggravated criminal sexual abuse in an indictment which was returned in language similar to the one brought in this case. There the State alleged that the defendant "knowingly committed an act of sexual conduct with [the victim], who was at least 13 years of age but under 17 years of age, in that [he] placed his mouth on the vaginal area of [the victim, and] was at least five years older than [the victim]." (*Edwards*, 195 Ill. App. 3d at 457.) The charge in *Edwards* "omitted the Code's provision that the relevant sexual conduct was 'for the purpose of sexual gratification or arousal of the victim or the accused,'" and the court held that the "purpose of sexual gratification" provision "was not *** inessential merely because its source is the statutory definition *** of the charged offense, aggravated criminal sexual abuse." (*Edwards*, 195 Ill. App. 3d at 457.) Consequently, the court reversed the defendant's convictions on those counts.

We do not agree with *Edwards*; instead, we find that *People v. Lewis* (1986), 147 Ill. App. 3d 249, *appeal denied* (1987), 113 Ill. 2d 580, *cert. denied* (1987), 482 U.S. 907, 96 L. Ed. 2d 379, 107 S. Ct. 2487, correctly states the law. In *Lewis*, the indictment charged that the defendant had committed the offense of aggravated criminal sexual abuse, in that "he, a person 17 years of age or over, committed an

act of sexual conduct, to wit: sexual intercourse with [O.S.], a person under 13 years of age, in violation of chapter 38, section 12—16—C(1) of the Illinois Revised Statutes 1983 as amended." (*Lewis*, 147 Ill. App. 3d at 251.) It is to be noted that the language in *Lewis* is quite similar to that used in the instant indictment and that both track the language of section 12—16(c)(1). The *Lewis* court held the test to be that " '[i]t is sufficient to allege an offense in the language of a statute if the words so far particularize the offense that by their use alone an accused is informed with reasonable certainty of the precise offense with which he is charged.' " (*Lewis*, 147 Ill. App. 3d at 251, quoting *People v. Abrams* (1971), 48 Ill. 2d 446, 459.) The court went on to hold that the words " 'sexual conduct,' standing alone \*\*\* were sufficiently specific to inform defendant with reasonable certainty of the offense with which he was charged." (*Lewis*, 147 Ill. App. 3d at 252.) Accordingly, we hold that Balle fails to show that he was not apprised with reasonable certainty of the charges brought against him.

In his third assignment of error, Balle claims that there was no proof that he intended to arouse either himself or S.J. In order to sustain the charge of aggravated criminal sexual abuse, the State needed to prove the following elements beyond a reasonable doubt: (1) that Balle was at least 17 years old; (2) that S.J. was under 13 years old; (3) that Balle intentionally or knowingly touched or fondled S.J., either directly or through clothing; and (4) that the touching was for the purpose of sexual gratification or arousal of the victim or the accused.

Balle maintains that "where an accused is tried under section 12—16(c)(1)(i), the quantum of proof necessary to show intent to arouse in touching a child *should be something affirmative, something more than mere insinuations.*" (Emphasis added.) Here again Balle fails to cite any authority for his assertion. Instead, he contends that the circumstances in this case are consistent with innocent behavior, that there was no proof that he was a pedophile, nor of arousal, *e.g.*, no flushed faces, heavy breathing, or close body contact.

■ Balle fails to consider, however, that "[i]ntent to arouse or satisfy sexual desires may be established by circumstantial evidence" —that the trier of fact may consider the "circumstances and facts and infer defendant's intent from his conduct." (*People v. Goebel* (1987), 161 Ill. App. 3d 113, 125, *appeal denied* (1988), 118 Ill. 2d 547.) We are persuaded that Balle's acts themselves—his "method of abuse upon S.J.," as the State expresses it in its brief—supplied the proof of the requisite sexual arousal or gratification. His actions and words in the gangway admit no doubt as to the criminality of his behavior.

There was ample evidence that he had performed an act of sexual abuse, namely, his touching of the victim's vagina; and the witnesses heard him directing them to "juice too," the meaning of which appears to have been undisputed. Balle did not inadvertently, accidentally, or medically touch S.J.'s vaginal area. His intentions were clearly and unmistakably for sexual gratification and arousal, and under the circumstances surrounding the events that transpired in this case, they could have had no other purpose—certainly not an innocent one.

As his fourth issue, Balle complains that he was denied a fair trial because of the State's use of what he alleges was hearsay evidence, and as to which he makes a four-pronged argument. First, he argues that the trial court erroneously applied amended section 115—10, of the Code of Criminal Procedure. Between the time the offense was committed and the time Balle went to trial, section 115—10 was amended. The offense occurred prior to January 1, 1988, but the trial took place after January 1, 1988, the effective date of the amended section.

Prior to January 1, 1988, section 115—10 permitted a person other than the complainant to testify only to the fact that a complaint was made, but not to the substance or details of the complaint. Since January 1, 1988, amended section 115—10[1] has permitted testimony

---

[1]Amended section 115—10 (Ill. Rev. Stat. 1987, ch. 38, par. 115—10) reads as follows:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violation of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child *** that he or she complained of such act to another; and

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement."

regarding the fact that a complaint was made, as well as the details of the complaint.

Balle urges that section 115—10 is a procedural statute affecting substantive rights because, although it does not allow identity to be admissible, it does allow details, previously inadmissible, now to be admissible; therefore, it cannot be applied retroactively. (See *Hogan v. Bleeker* (1963), 29 Ill. 2d 181.) To apply the statute retroactively, he asserts, violates the *ex post facto* clauses of the Illinois and United States constitutions, in that it "alter[s] the legal rules of evidence in order to convict the defendant." *People v. Anderson* (1973), 53 Ill. 2d 437, 441.

■ Balle errs. This court, in *People v. Hart* (1991), 214 Ill. App. 3d 512, 519, dealt with a challenge to amended section 115—10 that it was *ex post facto*, and it adopted the rationale expressed in the second district case of *People v. Priola* (1990), 203 Ill. App. 3d 401. In *Priola*, the court determined that "the more recent version [of section 115—10] does not necessarily make convictions easier" simply because it allows more testimony concerning the specific details of a corroborative complaint. (*Priola*, 203 Ill. App. 3d at 418.) The court went on to state that a corroborative complaint "[had] always [been] admissible if the child testified. *** Such testimony is now admissible only if the trial court determines in a hearing outside the jury's presence that sufficient safeguards and reliability exist." (*Priola*, 203 Ill. App. 3d at 418.) Applying this reasoning, the *Hart* court held

> "that the trial court did not err by applying the amended version of the statute retroactively. The statute, as amended, is a procedural rather than a substantive change, which does not alter the elements of the offense, increase the punishment, or decrease the State's burden of proof. Such alterations, which merely remove existing restrictions upon the competency of certain witnesses, relate to modes of procedure only, in which no one has a vested right. [Citations.] Accordingly, the retroactive application of the amended statute does not offend our constitutional concepts concerning *ex post facto* laws." (*Hart*, 214 Ill. App. 3d at 519.)

Thus, Balle's argument as to this prong of the issue cannot be upheld.

■ In the second prong of his argument, Balle maintains that even if the trial court was correct in applying amended section 115—10, that section requires that the court conduct a hearing to determine if the "time, content, and circumstances of the statement provide sufficient safeguards of reliability," (Ill. Rev. Stat. 1987, ch. 38, par. 115—10(b)(1)) and that since no such hearing was held in this

case, the trial court erred. Balle also contends that he was not given notice, pursuant to section 115—10(d), of the State's intention to offer the statement in evidence; therefore, he urges, his conviction should be reversed.

*People v. Hart* (1991), 214 Ill. App. 3d 512, dealt also with the issue of a trial judge's failure to conduct a separate hearing to determine the admissibility of a minor's statements made prior to trial. In that case, as in the instant one, the defendant was charged, in part, with aggravated criminal sexual abuse, and numerous witnesses testified, including the victim's mother. In *Hart*, however, the court did not allow the victim to testify because it found that although she "knew the difference between the truth and a lie, she did not appreciate the meaning of an oath." (*Hart*, 214 Ill. App. 3d at 517.) The case was tried before the bench, and the trial judge determined that the accounts of the victim's statements were admissible. In following *People v. Roy* (1990), 201 Ill. App. 3d 166, the *Hart* court held that

"the requirement of a 'hearing outside the presence of the jury' is not wholly inapplicable to bench trials. However, since the trial judge is presumed to have considered only admissible evidence, he may be presumed to have considered the time, content, and circumstances under which the statement [*sic*] was made in determining the reliability of the statements [*sic*]. ***

In *Roy*, the failure to conduct a hearing was not held to be error even though the trial court never specifically articulated its findings as to the reliability of the statements [*sic*]." (*Hart*, 214 Ill. App. 3d at 524, citing *People v. Roy*, 201 Ill. App. 3d at 183.)

In a fact situation similar to that in *Roy*, the trial court here, too, "never specifically articulated its findings as to the reliability of the statements" (*Roy*, 201 Ill. App. 3d at 524); however, applying the principles deducible from *Roy* and *Hart*, we hold that under the circumstances of this case it was not necessary to have a separate hearing, and even if it were, it would amount to no more than harmless error.

■ In the third prong of his argument, Balle argues that it was error for the trial court to allow S.J.'s mother to testify to S.J.'s out-of-court statement to her. His initial contention as to this claim is that S.J.'s statement did not qualify as a complaint under the statute, since it was made in response to leading questions. Assuming that S.J.'s statement does qualify as a complaint under the statute, Balle argues, Mrs. J.'s statement that S.J. had told her that Balle had put his hand under S.J.'s shorts and put his hand in her "cat" is beyond

the exception to the hearsay rule, because it includes details and identification of the defendant. *People v. Valko* (1990), 201 Ill. App. 3d 462.

Balle's reliance on the standard in *Valko* is unwarranted. Although he correctly states the rule of law as enunciated in *Valko*, he overlooks that *Valko* interprets the 1985 statute, that is, the pre-amendment version of section 115—10. As noted above, the critical part of the statute in question was modified in 1988, thus making the *Valko* rule, based upon the 1985 statute, no longer pertinent. Further, S.J.'s statement certainly qualifies as a complaint; a victim's responding to a question of "what happened" does not make the statement inadmissible. *People v. Miller* (1978), 58 Ill. App. 3d 156.

As we have previously noted in this opinion, detail, but not identification, is admissible. Yet in the case at bar although detail in the form of an identification of the defendant was admitted into evidence, we find it to be harmless error because S.J., Mrs. J. and Lamar identified Balle in court as the perpetrator of the offense with which he was charged. (*People v. Server* (1986), 148 Ill. App. 3d 888.) More important, Balle did not raise a misidentification defense. In order to refute "penetration," he presented a defense of "inadvertent touch." Therefore, we do not perceive how he could have been prejudiced by S.J.'s out-of-court statement to her mother.

■ In the fourth and final prong of his argument, Balle complains that Dr. Ahart's testimony regarding S.J.'s out-of-court statement to her exceeded the scope of the statutory exception to the hearsay rule under amended section 115—10 and section 115—13[2] of the Code of Criminal Procedure. His initial claim is that "[S.J.'s] statements to [the doctor] did not qualify as a complaint under [amended section 115—10]. Instead of going to her family doctor, [S.J.] was taken by the police to a hospital where she was examined by medical personnel experienced in testifying in court." Balle also argues that the statements do not qualify as an exception to the hearsay rule under section 115—13 because Dr. Ahart was an examining

---

[2]Section 115—13 (Ill. Rev. Stat. 1987, ch. 38, par. 115—13) reads as follows:

"In a prosecution for violation of Section 12—13, 12—14, 12—15 or 12—16 of the 'Criminal Code of 1961', statements made by the victim to medical personnel for purposes of medical diagnosis or treatment including descriptions of the cause of symptom, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admitted as an exception to the hearsay rule."

doctor and not a treating doctor. *People v. Taylor* (1987), 153 Ill. App. 3d 710.

It will be noted, however, that the rule in *Taylor* does not deal with the section 115—13 exception to the hearsay rule. Instead, it deals with general hearsay rules regarding statements made to treating physicians. Rather, we find her testimony admissible pursuant to the medical personnel exception provision of section 115—13. In *Roy*, the fourth district declined to make any distinction between types of physicians testifying under section 115—13. (*People v. Roy* (1990), 201 Ill. App. 3d 166.) There the court held that

"[s]ection 115—13 does not provide for a distinction between examining physicians and treating physicians. Instead, it provides statements of sexual assault victims to medical personnel for purposes of 'diagnosis or treatment' shall be admitted. The reference to diagnosis or treatment evinces a legislative intent to apply this provision broadly and not to limit the testimony only to treating physicians. [Citation.]" (*Roy*, 201 Ill. App. 3d at 178.)

Thus S.J.'s statement, introduced in evidence through Dr. Ahart, was properly admitted.

■ In his fifth and last issue, Balle claims that the trial court abused its discretion when it improperly weighed the mitigating and aggravating factors in sentencing him to four years' incarceration. At sentencing, the trial judge considered in mitigation the fact that Balle had no record of convictions. Balle complains, however, that the trial court considered, as an aggravating factor, the fact that he might have been in need of mental treatment. In addition, Balle argues, the trial judge improperly relied on speculation that the crime could have developed into one with even more serious consequences. Balle argues that because he was not proven guilty of committing a more serious offense, it was improper for the trial judge to deny him probation or to sentence him to more than the minimum term.

The law is clear that a trial judge's imposition of sentence will not be disturbed absent an abuse of discretion, and her decision is to be given great weight and deference. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) It is not the function of the reviewing court to serve as a sentencing court (*People v. Edwards* (1988), 167 Ill. App. 3d 324, 337), since the trial court is in the best position to fashion a sentence. (*People v. Steppan* (1985), 105 Ill. 2d 310, 323.) Balle was found guilty of aggravated criminal sexual abuse, a Class 2 felony, which carries a sentence of not less than three and not more than seven years' imprisonment. (Ill. Rev. Stat. 1987, ch. 38, pars. 12—16(c), 1005—8—1(a)(5).)

The record confirms that the trial court balanced Balle's rehabilitative potential against other factors. Accordingly, we hold that Balle was properly sentenced to a term of four years.

For all of the above reasons, the judgment of the circuit court is affirmed, but we deny the State's request for costs in this appeal.

Affirmed.

HARTMAN, P.J., and McCORMICK, J., concur.